**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DELONTE SHAMIR SEASE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 26-cv-5853** |
| | : | |
| **DR. CRESHNER, *et al*.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.** **October 15, 2026**
**United States District Judge**

Plaintiff Delonte Shamir Sease, who is currently confined at SCI Phoenix, brings this *pro se* action pursuant to 42 U.S.C. § 1983 alleging that prison officials violated his constitutional rights. For the following reasons, the Court will grant Sease's application to proceed *in forma pauperis* and screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). As explained below, Sease's Complaint will be dismissed in part. Sease will be permitted to file an amended complaint or proceed with his claim that passes statutory screening.

## I. FACTUAL ALLEGATIONS[1]

Sease was housed in a psychiatric observation cell ("POC") at SCI Phoenix on January 29, 2026. (Compl. at 3-4.) During the second shift, he was told that he was going to be transported back to the Restricted Housing Unit ("RHU"). Sease "informed c/o's and Psych that [he] was not mentally ready" to return the RHU (*id*. at 7) and that if they brought him there, he "would kill [him]self" (*id*. at 5). Dr. Creshne asked Sease how he planned to do that, and Sease

[1] The following allegations are taken from the Complaint (ECF No. 1). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

responded by showing him "weeks' worth of psych meds" that he had "saved up" and by stating that he "could also hang it up." (*Id.* at 5.) Dr. Creshner told Sease he had to go to the RHU and then walked away. (*Id.*) Sease spent the remainder of the second shift warning correctional officers that he was going to kill himself if they tried to bring him back to the RHU. (*Id.*) At one point, Nurse Shaefer gave Sease more psych meds. (*Id.*) Sease showed the meds to the corrections officers so they could see that he "was no longer playing." (*Id.*) CO Bishop and CO Potoski watched as Sease then swallowed the psych meds and "walked off," as Bishop stated that Sease would need to "go to the ER to get [his] stomach pumped." (*Id.*) After taking the medication, Sease "began struggling to stay conscious and awake while [he] was calling out" to officers. (*Id.*)

At some point thereafter, Sease was told to come to his cell door to be "cuffed up." (*Id.* at 5.) Sease "willfully" and "compliant[ly]" approached his cell door believing he was "going to medical," but when the corrections officers opened the door, Sease was "taken down by the CERT team and hit with a shock shield." (*Id.*) Sease's back hit the hard part of his bed and caused injuries. (*Id.*) Sease was "cuffed and shackled and dragged back to the RHU without getting [his] stomach pumped." (*Id.*) While at the RHU, he was "left to sit in a cell without further medical attention throughout the night." (*Id.*) Sease was later given two misconduct reports by Lieutenant Ferrogine for "disobeying an order." (*Id.*) Sease was seen by an undisclosed medical provider the next morning whom he told he was having "severe stomach pains" and a "[little] bit of lower pain." (*Id.*) Sease was prescribed a laxative and pain medication that he never received. (*Id.*)

On February 3, 2026, Sease submitted a grievance, which named Ferrogine, about the alleged excessive force incident on January 29, 2026. (*Id.*) On February 19, 2026, while Sease

was housed at the RHU, the cert team conducted cell searches. (*Id.*) Sease alleges that even though he "complied with all orders at that time," and even though nothing was found in his cell, he received "another misconduct which stated that [he] refused to obey orders." (*Id.*) The misconduct was written by Ferrogine, who allegedly misstated that Sease refused to obey "multiple orders to remove [his] cell window." (*Id.*) Sease states that Ferrogine "lie[d]" on the misconduct in retaliation for Sease filing a grievance about his involvement in the January 29th incident. (*Id.*) Sease was "issued [Disciplinary Custody]" or DC-time" for each misconduct report he received. (*Id.*)

Based on these allegations, Sease asserts Eighth Amendment deliberate indifference claims, First Amendment retaliation claims, and Fourteenth Amendment due process claims. (*Id.* at 2.) He names as Defendants Dr. Creshner, Lt. C. Ferrogine, Superintendent Joseph Terra, Deputy Superintendent Charles Hensley, and Lisa Durrand. (*Id.* at 1-3.) For relief, Sease seeks money damages. (*Id.* at 7.)

## II. STANDARD OF REVIEW

The Court will grant Sease leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if it is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. Pursuant to § 1915(e)(2)(B)(ii), the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007));

---

[2] Since Sease is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). As Sease is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Sease asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[3] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

---

[3] Sease sues Defendants in both their individual and official capacities. (Compl. at 1-2.) Official capacity claims against a defendant are indistinguishable from claims against the entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Thus, Sease's § 1983 "official capacity" claims for damages against the Defendants—all of whom are employed by the Pennsylvania Department of Corrections—are really claims against the Commonwealth, which is shielded from such claims by Eleventh Amendment immunity and, in any event, is not considered a "person" subject to liability under § 1983. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their

**A. Defendants Against Whom No Personal Involvement Is Alleged**

Sease names Superintendent Terra, Deputy Superintendent Hensley, and Lisa Durrand in the Complaint but makes no substantive allegations concerning their involvement in the incidents he describes. Any § 1983 claim against them is, therefore, not plausible because, as noted above, a "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677). Moreover, where there are multiple events and defendants at issue, alleging personal involvement cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged").

To the extent that Sease names Terra and Hensley due to their high-ranking positions at SCI Phoenix, this is also not sufficient to state a plausible claim. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" a facility or their subordinates are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*); *Zigler v. Warren*, No. 21-19474, 2022

---

official capacity."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). Accordingly, the Court will dismiss the official capacity claims. The rest of the Court's analysis will focus on the damages claims against the Defendants in their individual capacities.

WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Supervisors like Terra and Hensley can only be found liable for the unconstitutional acts undertaken by their subordinates in two scenarios. First, a supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom, which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014*), reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Failure to" claims, such as a failure to train, failure to discipline, or failure to supervise, are generally considered a subcategory of policy or practice liability. *Id.* at 316-17.

Because Sease has made no allegations against Terra, Hensley, or Durrand, he has failed to state plausible claims against them. Accordingly, all claims against these Defendants will be dismissed. Sease will be permitted to submit amended claims if he can allege facts showing how these Defendants were each personally involved in his alleged constitutional harm.

**B. Claims against Dr. Creshner**

Dr. Creshner is alleged to be a "Psych Dr. who prescribes medications and is in charge of the Psych in the [POC]." (Compl. at 4.) It is not clear what constitutional claim Sease asserts against Dr. Creshner, who is not described as having been involved in the alleged excessive force committed by the cert team or the issuance of misconducts; rather, he is alleged to have refused Sease's request to stay in the POC cell and avoid transfer to the RHU. To the extent that Sease

asserts an Eighth Amendment claim against Dr. Creshner, the claim is not plausible as pled.

To state a claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference claims can be based on the failure to provide adequate mental health services. *DeJesus v. Delaware through Del. Dep't of Corr*., 833 F. App'x 936, 940 (3d Cir. 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017)).

Sease alleges that while housed in a POC cell on January 29, 2026, he warned Dr. Creshner that he would harm himself if he was forced to go to the RHU. (Compl. at 5.) Sease further alleges that Dr. Creshner asked Sease how he would harm himself, but then disregarded Sease's response, told Sease he had to go to the RHU, and walked away. (*Id.*) These facts do not support a plausible Eighth Amendment claim for several reasons. First, Sease has not specifically alleged that he suffers from a serious medical or mental health condition. He alleges that he told "Psych" and corrections officers that he would attempt to take his life if they tried to

move him from the POC unit, but he does not allege what medical or mental health conditions he suffers from that required his confinement in a POC unit or otherwise required assistance from Dr. Creshner. Moreover, while a "vulnerability to suicide" can qualify as a serious medical need, the facts alleged must plausibly infer a "strong likelihood, rather than a mere possibility" of suicide. *Palakovic*, 854 F.3d at 222. Absent more developed facts explaining the nature of his medical or mental health needs, the Court cannot conclude that Sease has sufficiently alleged the first element of the claim. Second, Sease does not plausibly allege how Dr. Creshner was deliberately indifferent to his medical or mental health needs. Allegations that Dr. Creshner refused Sease's request to remain in the POC cell despite Sease's threats to harm himself are not suggestive of deliberate indifference, particularly because Sease alleges he had been receiving some mental health treatment.[4] *See Palakovic*, 854 F.3d at 228 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." (citation modified)). Finally, Sease has not alleged how he was harmed by Dr. Creshner's actions. *See DeJesus*, 833 F. App'x at 940. Accordingly, the Court will dismiss the Eighth Amendment claim against Dr. Creshner.[5]

---

[4] The Court understands Sease to assert a claim for deliberate indifference to serious medical needs and not a claim for failure to prevent suicide. *See DeJesus*, 833 F. App'x at 939 (explaining difference between two types of claims and stating that "to hold prison officials liable for failure to prevent a suicide, a plaintiff must establish that: (1) the inmate had a 'particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted;' (2) the prison officials 'knew or should have known' of that vulnerability; and (3) those officers 'acted with reckless or deliberate indifference' to the inmate's particular vulnerability" (quoting *Palakovic*, 854 F.3d at 223-24).

[5] To the extent that Sease also asserts an Eighth Amendment claim based on allegations that he was not sent to medical after swallowing "saved up" medication and never received the laxatives and pain medication after he saw a provider the next day, the claims must also be dismissed. Sease has not identified any Defendant who was personally involved in the alleged

**C. Claims against Ferrogine**

The bulk of the allegations in the Complaint are asserted against C.O. Ferrogine. Sease alleges that Ferrogine was the subject of his grievance concerning the January 29th excessive force incident. (Compl. at 5.) He also alleges that Ferrogine gave him a misconduct for refusing to obey orders during a cell search conducted on February 19, 2026, by the CERT members. Ferrogine allegedly wrote in the misconduct that he "gave [Sease] multiple orders to remove [his] cell window, which was a lie," and that the misstatement was intended as "revenge" and to "retaliate" against Sease for filing the grievance. (*Id.*) Sease received time in disciplinary custody for the misconduct. Based on these allegations, the Court understands Sease to assert Eighth Amendment excessive force claims, First Amendment retaliation claims, and Fourteenth Amendment due process claims. The Court will address each claim in turn.

**1. Excessive Force**

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The key consideration in assessing an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Factors relevant to the analysis include "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful

---

denial of medical care. Nor has he alleged any facts about harm or injury he suffered as a result of the denial of care. *See DeJesus*, 833 F. App'x at 940.

response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks omitted).

Sease alleges that after swallowing "weeks' worth" of "psych meds," he was "taken down by the CERT members and hit with a shock shield," causing him to hit his back on the bed, and then "dragged to the RHU." (Compl. at 5.) Even assuming that Sease's allegations support a plausible inference that the force used against him on January 29th was objectively unreasonable, he does not sufficiently allege how Ferrogine was specifically involved in the incident. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207. Instead of describing what Ferrogine did specifically to use unreasonable force against him, he instead groups the prison officials together (e.g., "CERT team"), as participating in the alleged event, which is insufficient to allege personal involvement. *See Lawal*, 546 F. App'x at 113 (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff). Accordingly, Sease has failed to allege a plausible excessive force claim.[6]

**2. First Amendment Retaliation**

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.

---

[6] To the extent Sease intends to assert a claim for deliberate indifference to medical care against Ferrogine based on allegations that he was denied medical care, including getting his stomach pumped, after swallowing two weeks of "psych meds," he does not state a plausible claim for similar reasons. Sease has not alleged how Ferrogine was specifically involved in denying him medical care. Moreover, as explained above, *see supra* at § III.B, Sease has also not plausibly alleged that he suffers from a serious medical or mental health need.

*See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). As to the first element, a prisoner's filing of a lawsuit, grievance, or other complaint, or even expressing an intent to do so to prison authorities, is constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016). As to the second element, an adverse action "is one sufficient to deter a person of ordinary firmness from exercising his First Amendment rights," and "need not be great in order to be actionable; rather, it need only be more than *de minimis*." *Id.* at 422 n.6, 423 (citation modified). To satisfy the third element, a prisoner must allege a causal link between the specific protected activity and the adverse action. *See, e.g.*, *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422; *see also Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017).

Sease alleges that he filed a grievance on February 3, 2026, about the alleged January 29, 2026 incident of excessive force involving Ferrogine. Sease further alleges that after being subjected to a cell search on February 19, 2026, Ferrogine gave him a false misconduct report stating that Sease did not obey orders during the search when he did. Sease claims that the false misconduct report—which he received less than three weeks after his grievance, and which resulted in him receiving time disciplinary custody as a punishment—was issued to "exact revenge and retaliation against [Sease]" for filing the grievance. The allegations, as pled, state a plausible First Amendment retaliation claim against Ferrogine. *See Mitchell v. Horn*, 318 F.3d 523, 530-31 (3d Cir. 2003) ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."). Accordingly, this claim may proceed past statutory screening.

**3. Due Process**

The Court also understands Sease to assert a Fourteenth Amendment due process claim against Ferrogine based on the time he spent in restricted housing for the "falsely written misconducts." (Compl. at 7.) The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It is well settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (stating that the United States Constitution itself does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement). Rather, in the prison context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Moreover, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486)).

"When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (*per curiam*) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not

deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486. The United States Court of Appeals for the Third Circuit has held that "[p]lacement in administrative segregation for days or months at a time . . . do[es] not implicate a protected liberty interest." *Arango v. Winstead*, 352 F. App'x 664, 666 (3d Cir. 2009) (*per curiam*) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)); *see also Smith*, 293 F.3d at 654 (finding no liberty interest triggered by seven-month placement in disciplinary confinement).

Here, Sease alleges that he received time in disciplinary custody for at least two misconduct reports he received. However, he does not allege when and for how long he spent in disciplinary custody nor how the conditions of his confinement there were otherwise more restrictive on him than on other inmates there. Without additional details, the Court is unable to determine whether Sease's confinement in disciplinary custody constituted the type of "atypical" deprivation of prison life that would trigger due process protections. Accordingly, the facts as pled, do not give rise to a plausible basis for a due process claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Sease leave to proceed *in forma pauperis* and dismiss his Complaint in part for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The official capacity claims will be dismissed with prejudice. Sease's First Amendment retaliation claim asserted against Ferrogine may proceed to service. The balance of the Complaint will be dismissed without prejudice. Sease may file an amended complaint if he can allege additional facts to cure the deficiencies the Court has noted in the claims dismissed without prejudice. Alternatively, he may proceed with his First Amendment retaliation claim

against Ferrogine. In addition, Sease's Motion for the Appointment of Counsel will be denied without prejudice as premature.[7]

An appropriate order follows, which contains additional instructions as to amendment.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**

---

[7] Pursuant to § 1915(e), the Court may request an attorney to represent an indigent plaintiff in a civil action. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Although district courts have broad discretion to request counsel for indigent *pro se* litigants, appointment of counsel is not a statutory or constitutional right of the litigant, but rather a privilege. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011) (citation omitted); *see also Montgomery v. Pinchak*, 294 F.2d 492, 498 (3d Cir. 2002). In determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). If a court finds that the action arguably has merit, it should then consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citing *Tabron*, 6 F.3d at 155-56, 157 n.5). This list is not exhaustive, nor is any one factor determinative. *Id.* at 458. Rather, the *Tabron* factors should serve as a guidepost to ensure that courts will only appoint counsel in non-frivolous matters. *Id.*

Here, at this early stage of the proceedings, before the Complaint has even been served, the factors do not weigh in favor of appointing counsel. The claim that has passed statutory screening does not appear to involve complex legal issues or require expert testimony. Moreover, the Court is unable to assess the complexity of any amended claims Sease may file in an amended complaint. Thus, Sease's motion is premature and must be denied. However, Sease may renew his motion should the case proceed to discovery.